**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,

*Petitioner,*

v.

ERNEST WILLIAMS; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents.*

No. 01-2072

On Petition for Review of an Order
of the Benefits Review Board.
(01-0629)

Argued: May 9, 2002

Decided: July 11, 2002

Before WILKINSON, Chief Judge, and WILLIAMS and
KING, Circuit Judges.

Petition for review denied by unpublished per curiam opinion. Judge
Williams wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** Jonathan Henry Walker, MASON, COWARDIN &
MASON, P.C., Newport News, Virginia, for Petitioner. Robert Elliott
Walsh, RUTTER, WALSH, MILLS & RUTTER, L.L.P., Norfolk,
Virginia, for Respondents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Petitioner Newport News Shipbuilding & Dry Dock Company seeks our review of the decision rendered in favor of Respondent Ernest Williams in October 2000 by the Benefits Review Board ("BRB"). *Williams v. Newport News Shipbldg. & Dry Dock Co.*, Decision and Order, 00-0249 (Oct. 31, 2000). Williams, a Newport News employee, sought workers' compensation benefits for three days of lost time (disability) in August 1997. Newport News has contested Williams's claim for benefits, maintaining that it was filed in an untimely manner. The BRB ruled otherwise and, as explained herein, we agree.

I.

A.

On July 12, 1993, while working as a hook man for Newport News, Williams injured his back when he was jerked off the ground by a magnetized plate. He immediately reported his injury to his supervisor, and he then sought treatment at the Newport News Medical Clinic. The Clinic referred Williams to Dr. Jeffery Persons, an orthopedist, for treatment of his back injury. Dr. Persons directed Williams not to work from July 28, 1993, through September 26, 1993, and Newport News paid him temporary total disability benefits during this period. On September 27, 1993, Williams returned to his regular duties at Newport News. He then worked continuously at Newport News, without any work restrictions and without any further lost time stemming from his back injury.

During the period from September 1993 to August 1997, Williams remained under the care of Dr. Persons, receiving treatment for his back injury. Dr. Persons's medical notes reflect that he made a diag-

nosis of degenerative disc disease in September 1993, and those notes indicate that Williams periodically had acute pain flare-ups related to his back condition. Furthermore, Dr. Persons's July 22, 1996, notes indicate that he evaluated Williams's condition as "variable but will probably get progressively worse over the y[ea]rs." And as of that date, according to Dr. Persons, Williams's condition "does not warrant any surgical intervention at this time."

In late July 1997, Williams's back pain worsened. After consulting with Dr. Persons, Williams was referred to a Dr. Kerner, who evaluated Williams's condition and discussed treatment options with him. Dr. Kerner promptly arranged for Williams to undergo a nerve block procedure, which required the insertion of a needle into Williams's back. Williams underwent this procedure on August 5, 1997, and, after missing three days of work, he returned to his regular duties at Newport News, again without any work restrictions, on August 8, 1997.

## B.

On August 27, 1997, less than three weeks later, Williams filed his claim for workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act § 1 et seq., 33 U.S.C. § 901 et seq. ("LHWCA"). He sought temporary and total disability benefits payments for the three-day period from August 5, 1997, through August 7, 1997 (the "Claim"). Newport News contested the Claim, asserting that it was filed in an untimely manner under the LHWCA. On May 11, 1999, an administrative law judge of the Department of Labor (the "ALJ") conducted a hearing on the Claim, pursuant to 33 U.S.C. § 919. After considering the evidence and the applicable legal principles, the ALJ ruled that the Claim was filed in an untimely manner, pursuant to the one-year limitations period established by 33 U.S.C. § 913(a).[1] *See Williams v. Newport News Shipbldg. & Dry Dock Co.*, Decision and Order Denying Benefits, 5-89519 at 4 (Oct. 20, 1999) (the "ALJ Decision") ("I find that the Claimant knew or

---

[1]Section 913(a) of Title 33 provides, in relevant part, that "the right to compensation for disability . . . shall be barred unless a claim . . . is filed within one year after the injury."

should have known that the accident would likely impair his capacity to earn wages prior to August 27, 1996, and that his claim is barred.").

Williams appealed the ALJ Decision to the BRB, maintaining that the ALJ had erred, as a matter of law, in finding that the Claim was untimely. The BRB agreed with Williams, and it reversed the ALJ Decision and remanded the Claim to the ALJ for further consideration. *Williams v. Newport News Shipbldg. & Dry Dock Co.*, Decision and Order, 00-0249 at 4 (Oct. 31, 2000) (the "BRB Decision"). On remand, the ALJ ordered Newport News to pay the Claim. *Williams v. Newport News Shipbldg. & Dry Dock Co.*, Decision and Order, 5-89519 (April 5, 2001). Newport News then requested expedited review by the BRB, and the BRB issued its final order on July 9, 2001. Newport News has filed a timely petition for review with this Court, and we possess jurisdiction pursuant to 33 U.S.C. § 921(c).

## II.

We review de novo a decision of the BRB on a question of law. *Zapata Haynie Corp. v. Barnard*, 933 F.2d 256, 258 (4th Cir. 1991). We also review de novo an issue of whether the BRB properly accepted as conclusive an ALJ's factual findings. *Id.*; *see also* 33 U.S.C. § 921(b)(3).

## III.

In its petition for review, Newport News maintains that the BRB improperly substituted its own findings of fact for those made by the ALJ. *See* 33 U.S.C. § 921(b)(3) (providing that BRB orders are to be based on the hearing record, and findings of fact made by ALJ are "conclusive if supported by substantial evidence in the record considered as a whole"). In particular, it contends that the BRB impermissibly made a finding of fact by deciding that Williams "had no reason to be aware of a likely impairment of his earning power until July 30, 1997, at the earliest, when Dr. Kerner scheduled [Williams] for nerve blocks." BRB Decision at 4. Thus, Newport News contends that the BRB acted outside the scope of its statutory authority.

A.

Under the LHWCA, it is clear that the one-year limitations period established in § 913(a) is applicable to the Claim. A claimant such as Williams, however, enjoys a presumption that his Claim was filed in a timely manner. 33 U.S.C. § 933(b).[2] In 1991, in a decision of importance here, we explained that the one-year limitations period established under § 913(a) does "not commence to run until [the claimant] knew or had reason to know that . . . [the] injury was likely to impair his earning capacity." *Newport News Shipbldg. & Dry Dock Co. v. Parker*, 935 F.2d 20, 27 (4th Cir. 1991). In *Parker*, Judge Copenhaver took care to explain that "the experiencing of pain after an accident is insufficient as a matter of law to establish an awareness of a likely impairment of earning power." *Id.* (internal citations omitted). Importantly, we also observed that the one-year limitations period does not commence to run on the date the possibility of future surgery is merely identified, even if such a possibility is communicated to the claimant. *Id.* (stating that claimant "did not have reason to know of the likely impairment of his earning capacity until [his doctor] arranged surgery for him").

B.

As both the ALJ and the BRB recognized, the question of whether the Claim was filed in a timely manner relates to when Williams knew, or when he had reason to know, that his back injury was likely to impair his earning capacity. Based on the medical notes of Dr. Persons, the ALJ found that Williams possessed the requisite knowledge that his back injury would likely impair his earning capacity "at least as of July 22, 1996." ALJ Decision at 4. In reaching this conclusion, the ALJ found that, by July 1996, Williams knew that he had a degenerative disc disease; that he had suffered ongoing pain due to his back condition; that he had sought ongoing treatment for his pain; that he continued to work despite the pain; and that, while he knew that his

---

[2]Pursuant to § 933(b) of Title 33, "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat sufficient notice of such claim has been given."

condition would progressively worsen, it then required no surgical intervention.

In its review of the ALJ Decision, the BRB accepted these factual findings, but it concluded that they were insufficient, as a matter of law, to trigger the running of the one-year limitations period established by § 913(a). BRB Decision at 4. We agree with the BRB. This dispute is controlled by our decision in *Parker*, where we held that seeking ongoing treatment, experiencing pain, or knowing of a possible future need for surgery, are legally insufficient to trigger the running of the one-year limitations period. 935 F.2d at 27. And the findings of the ALJ, in ruling against the Claim, simply do not establish that Williams "knew or had reason to know that . . . [his back] injury was likely to impair his earning capacity [at least by July 22, 1996]." ALJ Decision at 4. Instead, as the BRB properly concluded, the ALJ's factual findings establish, as a matter of law, that Williams "had no reason to be aware of a likely impairment of his earning power *until July 30, 1997, at the earliest*, when Dr. Kerner scheduled claimant for [a] nerve block[] [procedure], which w[as] administered on August 5, 1997." BRB Decision at 4 (emphasis added).

We agree with the BRB that, accepting the ALJ's findings of fact, Williams had no reason to know, before July 30, 1997, that his back condition was likely to impair his earning capacity. BRB Opinion at 4. Therefore, as a matter of law, Williams had one year from that date, or until July 30, 1998, to file his Claim. His Claim was then filed in a timely manner on August 27, 1997, well within the one-year limitations period.

### IV.

Pursuant to the forgoing, we deny the petition of Newport News for review of the BRB Decision.

*PETITION FOR REVIEW DENIED*

WILLIAMS, Circuit Judge, dissenting:

I agree with the majority that the timeliness of Williams's claim is governed by this circuit's decision in *Newport News Shipbldg. & Dry*

*Dock Co. v. Parker*, 935 F.2d 20 (4th Cir. 1991), wherein we held that the one-year limitation period established under § 913(a) commences when the claimant "knew or had reason to know that . . . [the] injury was likely to impair his earning capacity." *Id.* at 27. I disagree, however, with the majority's conclusion that the Administrative Law Judge's (ALJ) factual findings were insufficient to support his conclusion that Williams knew of the likely impairment of his earning capacity "a[t] least as of July 22, 1996." (J.A. at 67.) Because I believe that the BRB improperly substituted its own factual findings for those of the ALJ, I respectfully dissent.

I.

After conducting a hearing, the ALJ found "that [Williams] knew or should have known that he had degenerative disc disease and that it [was] likely to impair his capacity to earn wages, a[t] least as of July 22, 1996." (J.A. at 67.) According to the Longshore and Harbor Workers' Compensation Act (LHWCA), the ALJ's factual findings "shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C.A. § 921(b)(3) (West 2001); *see also Parker*, 935 F.2d at 22-23, 27 (reviewing the ALJ's findings of fact regarding the timeliness of the claim for substantial evidence). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Parker*, 935 F.2d at 22 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

Williams testified that he "first realize[d]" that his back injury would cause him to "los[e] time from work" when Dr. Persons informed him that his back condition "would progressively get worse." (J.A. at 26.) Absences from work necessarily impair earning capacity. Thus, Williams's testimony establishes that Dr. Persons informed him of the progressive nature of his back injury and that, as of the date that Williams received this diagnosis, he subjectively was aware that his back injury likely would impair his earning capacity. Consequently, the relevant inquiry is the date on which Dr. Persons informed Williams that his back condition would get progressively worse.

Initially, Williams testified that Dr. Persons informed him of the progressive nature of his back injury "sometime in '97," (J.A. at 26), but he then stated that he could not remember when Dr. Persons informed him that his back would continue to get worse. (J.A. at 28.) Dr. Persons's medical reports indicated that in 1996, he diagnosed Williams as having "degenerative disc disease" requiring work restrictions. (J.A. at 66.) On July 22, 1996, Dr. Persons opined that Williams's condition likely would "get progressively worse." (J.A. at 66.) Based upon Dr. Persons's medical reports, the ALJ found that Dr. Persons informed Williams of the progressive nature of his back injury by July 22, 1996, at the latest. In so finding, the ALJ stated that "it is not probable, given these [medical] opinions, that [Dr. Persons] waited until 'sometime in '97' to discuss with [Williams] his diagnosis. It is far more proable that Dr. Persons discussed these matters at the time of his treatment of [Williams]." (J.A. at 67.) Credibility assessments, as well as factual findings and the inferences to be drawn therefrom, are within the exclusive province of the ALJ. *OWCP v. Newport News Shipbldg. & Dry Dock Co. (Dillard)*, 230 F.3d 126, 130 (4th Cir. 2000). In light of Williams's testimony regarding his realization that his injury would impair his earning capacity and Dr. Persons's medical records reflecting that the relevant diagnosis was rendered by July 22, 1996, there was substantial evidence to support the ALJ's factual finding that Williams possessed the requisite level of awareness of the extent of his injury prior to August 1996 and, therefore, that Williams's § 913 claim was untimely filed.*

---

*I note that Williams's claim would not have been speculative or otherwise improper during the one-year limitations period that I would hold is applicable, *see, e.g.*, *I.T.O. Corp. of Va. v. Pettus*, 73 F.3d 523 (4th Cir. 1996) (discussing speculative LHWCA claims), in that the LHWCA provides for the issuance of a nominal damages award where the claimant is disabled within the meaning of the Act but does not suffer a present loss of earning capacity. *See Newport News Shipbldg. & Dry Dock Co. v. Stallings*, 250 F.3d 868, 874-75 (4th Cir. 2001) (discussing in detail the purpose of the nominal damages award and the procedure under the LHWCA for a disabled claimant who is not yet experiencing a loss of earning capacity). Requests for modification may be made from the issuance of the nominal damages award once the claimant experiences an actual loss in earning power. *Id.*

I respectfully disagree with the majority's reliance upon *Parker* for its contrary conclusion. In *Parker*, after identifying the relevant standard for determining the timeliness of a LHWCA claim, we held that there was insufficient evidence to support the ALJ's factual finding regarding the commencement of the statute of limitations. *Parker*, 935 F.2d at 27. The ALJ found that the statute of limitations commenced on November 8, 1979, and that Parker's claim, which was filed in 1988, was untimely. The only evidence presented in support of these findings was Parker's persistent pain and a notation from Parker's doctor dated November 8, 1978 suggesting that Parker might need surgery at a future date. *Id.* Significantly, we noted that there was no evidence indicating that the possibility of surgery had been communicated to Parker. *Id.* ("[T]here [was] no evidence to contradict Parker's testimony that the possibility [of surgery] was not conveyed to him."). Here, however, there was substantial evidence supporting the ALJ's determination that the progressive nature of Williams's back condition was conveyed to Williams by July 22, 1996 and that Williams understood that the nature of his condition would result in a future loss of earning capacity.

II.

Insofar as the ALJ's finding that Williams's claim was untimely was supported by substantial evidence, the BRB improperly invaded the province of the ALJ by finding to the contrary. Thus, I would grant Newport News's petition for review of the BRB's decision and would vacate and remand with instructions to reinstate the ALJ's decision and order denying Williams's claim.